UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

CRIM. CASE NO. 15-20484

v.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

CHARLES MAHONE,

        Defendant.

_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO SUPPRESS FIREARM AND STATEMENTS

On August 4, 2015, Defendant Charles Mahone was charged in a single count indictment with being a felon in possession of a firearm on June 6, 2015, 18 U.S.C. § 922(g)(1) (Dkt. #11).[1] The indictment also contained a forfeiture allegation with regard to firearms and ammunition, 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c).

On November 24, 2015, Defendant Mahone filed a Motion to Suppress Evidence (gun and statements) (Dkt. #18). On January 19, 2016, the Government filed a Response. (Dkt. #21). On February 1, 2016, Defendant filed a Reply. (Dkt. #25).

---

[1] The indictment states that the offense occurred "On or about June 6, 2015." The Detroit Police Department reports and the testimony at the Evidentiary Hearing establish that the offense occurred on <u>July 18, 2015</u>.

1

On Tuesday, March 1, 2016, the Court held an evidentiary hearing. At the conclusion of the hearing, the Court requested supplemental briefing. Both parties filed a supplemental response on March 16, 2016. (Dkt. Nos. 28 & 29).

BACKGROUND

On July 18, 2015, around 5pm, two Detroit police officers, on the lookout for an SUV that had been involved in robberies in their area of patrol, pulled over Defendant's Chevy Tahoe SUV because he was not wearing his seat belt. Defendant does not contest his violation of the seat belt law. Defendant was the driver and the only occupant in the SUV.

The Eighth Precinct Special Operation officers, Huelsenbeck and Moreau, were outfitted with body microphones, and the police car had a video camera. The Court finds, after listening/viewing the audio/video ten times, wearing headphones, that it establishes the following facts:

| | |
|---|---|
| 4:58 PM | Defendant, driving a Chevy Tahoe SUV, is pulled over by the officers for not wearing a seatbelt. |
| 5:00 PM | Officer Huelsenbeck comes to his door and says: "How is your driving record? The police are looking for someone with a vehicle like this, that's all." |
| | Officer asks if there is anything illegal in the car: Defendant says "no." The defense does not deny that Defendant also said at that time, to the officer: you can check the car. |
| | Officer takes Defendant's driver's license and says "I'll be right back." |
| | Defendant has no proof of insurance, and the license plate did not match the |

|          | car. |
|----------|------|
| 5:00 PM  | Back in the police car, an officer says: "Driving record shows just one misdemeanor." |
| 5:01 PM  | An officer says: "He's got nothing." An officer speaking to his partner, in the police car asks: "Do you want to write him [a ticket]?" Answer: "No." |
| 5:02 PM  | Officer Moreau says: "Get Defendant out [of the car] if you want, if something doesn't look right." Officer Huelsenbeck says, "No." |
| 5:03 PM  | One officer says "We can order a truck if you want." Other officer says "no." |
| 5:03 PM  | In the police car, checking out facts on the SUV and the driver's records, an Officer says: "Defendant's car might have improper plates, and no insurance. Let's get the VIN number in case the car is stolen." Officer Huelsenbeck says: "I'll cover you, you get the VIN." |
| 5:04 PM  | Officers go up to the SUV; Officer Moreau gets the VIN. Officer Huelsenbeck says to Defendant: "I won't pat you down or nothing. Just get the VIN – if its registered to you, ok." |
| 5:05 PM  | Back in the police car, Officer Huelsenbeck says: "Defendant is way too f . . . ing nervous. We're getting him out of the car. Way too nervous, got his girlfriend on phone, won't look at me, hands on steering wheel. Peeks at me through the mirror every now and then." |
|          | An Officer says: "The car is registered to him." |
|          | Officer says: "Think there's a burner [gun] in there?" Other Officer says: "Wouldn't hurt to check." Officer says: "Wanna check? Let's go check, real quick." |
|          | Officers go to SUV: tell Defendant: "if nothing in the vehicle, you can go." |
|          | Officers open Defendant's driver's side door to get Defendant out; Defendant puts his hands up and is directed to the police car. Officers have Defendant bend over the hood, handcuff him behind his back, and place him in the back seat of the police car with Officer Huelsenbeck; Officer |

3

        Moreau searches the Defendant's SUV.

5:06 PM      Officer Huelsenbeck tells Defendant, "If there's nothing illegal in the vehicle, you'll be on your way."

5:09 PM      Confront Defendant with the gun Officer Moreau found in the SUV's front console.

5:09 PM      Officer Huelsenbeck: "I called that, didn't I."

      The issue in the instant case is whether the officers who, on Huelsenbeck's first approach to Defendant, asked if there was anything illegal in the car, and were told by Defendant "no, you can check," and had received consent to search the car, thereafter illegally prolonged the traffic stop to conduct a car search that produced (1) the gun, (2) a non-*Mirandized* statement from Defendant while he was handcuffed in the police car, and (3) a *Mirandized* statement the next afternoon while Defendant had been under continued detention.

      Did the Defendant's initial consent to search on being stopped, permit the officers, after they had verified that Defendant was the owner of the car, and had decided not to issue a ticket and or not impound the car for the traffic violation issues, to extend the stop to carry out a search of the car.

      The Government does not contend that the officers had reasonable suspicion to carry out the car search; the Government contends that the car search was lawful based on Defendant's initial and only consent to a search.

4

## LEGAL ANALYSIS

The Court finds relevant the recent 2016 Sixth Circuit decision in *United States v. Collazo*, __F.3d__ 2016 WL 1211948 (6th Cir. March 29, 2016), discussing the 2015 Supreme Court decision *Rodriguez v. United States*, 135 S.Ct. 1609 (2015):

> In *Rodriguez v. United States*, 135 S.Ct. 1609 (2015), the Supreme Court held "that a police stop exceeding the time needed to handle the matter for which the stop was made violates" a defendant's Fourth Amendment rights. *Id.* at 1612. "A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* (Brackets, citation, and internal quotation marks omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed" unless "reasonable suspicion of criminal activity justified detaining [the defendant] beyond completion of the traffic infraction investigation." *Id.* at 1614, 1616-17; *see also United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) ("Once the purpose of a traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." (Citation and internal quotation marks omitted)).
>
> "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (citation, ellipsis, and internal quotation marks omitted). For an officer's suspicion to be reasonable, he "must point to specific and articulable facts supporting his suspicion." *United States v. Perez*, 477 F. App'x 337, 341 (6th Cir. 2012) (citation and internal quotation marks omitted). This standard is less demanding than the probable-cause standard. *See Shank*, 543 F.3d at 313 (concluding that "reasonable suspicion can arise

5

>from evidence that is less reliable than what might be required to show probable cause" (citation and internal quotation marks omitted)). A determination regarding the existence of reasonable suspicion is based on the "totality of the circumstances," and a reviewing court "view[s] the evidence offered in support of reasonable suspicion using a common sense approach, as understood by those in the field of law enforcement." *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004).

2016 WL 1211948, at *8.

Although the Sixth Circuit in *Collazo* concluded under the facts in that case that the officers did not unconstitutionally prolong the traffic stop, this Court concludes that under the facts of the instant case, the police violated Defendant's constitutional rights under the *Rodriguez* precedent by prolonging the traffic stop to conduct a vehicle search. Indeed, the Government does not contend that there was reasonable suspicion of criminal activity to justify detaining Defendant beyond completion of the traffic infraction investigation. The Court concludes that Defendant's initial invitation to search in response to Officer Huelsenbeck's first question at 5pm, i.e. whether there was "anything illegal in there," was not a valid basis to extend the detention and remove and handcuff the Defendant in the police car after the officers had verified that it was Defendant's car, and they had completed, to their satisfaction, their tasks tied to the traffic infraction.

The officers did not search the vehicle until after any permissible justification to search had dissipated. The officers had decided to not even write Defendant a traffic ticket. Yet, the officers continued his detention – seized him, handcuffed him, and placed

him in a police car on a hunch – lacking reasonable suspicion. As the Sixth Circuit held in *United States v. Urrieta*:

> Although we do not relish the consequence of allowing a person possessing prohibited items to go free, we find even more unpalatable the thought of putting our stamp of approval on the practice of unlawfully extending the detention of traffic violators based on nothing more than an inchoate hunch.

520 F.3d 569, 579 (6th Cir. 2008).

The Court further finds, after listening to the recording carefully, with headphones, on ten occasions, that there is no evidence that the officers obtained a second or third consent during their subsequent interaction with Defendant. To the extent that the officers testified at the hearing, in response to leading questions that Defendant reaffirmed consent, there is no support for that in the recording, and the Court, relying on the audio/video, does not credit that testimony.

The Government contends that "consent to search remains in effect unless and until consent is revoked." Government's Supplemental Post-Hearing Response to Defendant's Motion to Suppress Evidence." Dkt. No. 29, p.1. This Court disagrees, based on *Rodriguez*:

> Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." [*Illinois*] *v. Caballes*, 543 U.S. 405, 408 (2005). Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.

7

135 S.Ct. At 1615.

All of these inquiries were completed in the instant case to the officers' satisfaction. The Supreme Court concluded in *Rodriguez*:

> If an officer can complete traffic-based inquiries expeditiously, then that is the amount of "time reasonably required to complete [the stop's] mission." *[Illinois v.] Caballes*, 547 U.S. 405, 407 (2005). As we said in *Caballes* and reiterate today, a traffic stop "prolonged beyond" that point is "unlawful."

135 S.Ct. At 1616.

The Government's supplemental brief argues:

> During a traffic stop, a consent-based search legally occurs <u>even after</u> the officer concludes the original purpose of the stop. *United States v. Erwin*, 155 F.3d 818, 820, 823 (6th Cir. 1998)(en banc) (emphasis added).

This Court rejects the Government's *Erwin* argument that officers can carry out a search based on an earlier consent, after the officer concludes the original purpose of the stop. The Supreme Court's rulings in *Rodriguez* and *Caballes* reject the reasoning *Erwin*, and support this Court's conclusion in the instant case.

The Inevitable Discovery Doctrine Does Not Apply

The Court rejects the Government's alternative argument that the "inevitable discovery doctrine" applies to save the search because Officer Huelsenbock would have certainly secured and impounded the car if Defendant had not again consented at the later time after the traffic questions had been resolved. Officer Huelsenbeck testified at the

8

evidentiary hearing that if Defendant had not consented or revoked his consent that the vehicle <u>might</u> have been impounded:

> Well . . . that's one of the options that we have, to impound the vehicle and arrest him for the improper plate.

Huelsenbeck Evid. Hrg, Tr. 43.

The prosecution then followed up by introducing exhibit D, the Detroit Police Department Manual § 204.2-6.1 which states that "Offenders found to be driving a vehicle with improper plates shall be arrested and conveyed to the Detroit Detention Center." The prosecutor then asked Officer Huelsenbeck:

Q. This language suggests that arresting someone for an improper plate is mandatory. Is that true?

A. No. There is some discretion with that.

Q. Do you always arrest people who have – you find to be driving with an improper plate?

A. No.

Evid. Hrg., Huelsenbeck Tr. Pp. 44-45.

Significant to the Court's rejection of application of the inevitable discovery doctrine in this case is the audio recording where the officers conclude, *inter alia*, that they're not even going to issue a ticket to Defendant for these minor infractions, much less seize the car. The Court credits the audio statements of the officers: to not issue a ticket, not call a tow truck – and the above-quoted testimony of Officer Huelsenbeck. The Court does not credit responses to further leading hypothetical questions about what

9

must/could/might occur if . . . . . Thus, the Court rejects the Government's alternative argument that even if the car search was not legal under the Fourth Amendment, the inevitable discovery doctrine established in, *Nix v. Williams*, 467 U.S. 431 (1984), applies to the facts of the instant case to justify the search.

Fruit of the Poisonous Tree Doctrine Applies

The Court suppresses the seizure of the firearm, and further suppresses the statements made by Defendant after his arrest as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963). There was no attenuation of the Fourth Amendment violation. *Brown v. Illinois*, 422 U.S. 590 (1975). *Dunaway v. New York*, 442 U.S. 200 (1979).

First, after finding the firearm while Defendant was sitting handcuffed in the police car around 5:15pm, the officers formally told Defendant he was under arrest, and without *Mirandizing* him, interrogated him. Second, officers then conveyed him that evening to the Dickerson Detention Center where he was interrogated the next day by a Sergeant. Despite Defendant being *Mirandized* at the detention center, there were no intervening factors between the illegal arrest and the interrogation so as to support a claim of attenuation that purged the taint of the illegal arrest.

The Exclusionary Rule Applies

Finally, the Court concludes that the exclusionary rule should be applied to the gun and the statement in this case. In *Herring v. United States*, 129 S.Ct. 695, 698 (2009), the

Supreme Court held where there is a violation of the Fourth Amendment, suppression is not an automatic consequence: "Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." Because the error in *Herring* "was the result of isolated negligence attenuated from the arrest," the Supreme Court did not apply the exclusionary rule and suppress the evidence. *Id.* The *Herring* Opinion elaborated:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it.

*Herring*, 129 S.Ct. at 702. The Court added:

> The pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers.

*Id.* at 703 (quotation marks omitted).

The Court finds that in the instant case, the police mistake was not the result of negligence. The continued detention was done in the hope that something might turn up. The officers' "conduct, therefore, was purposeful . . . . Guessing is not good faith." *United States v. Fuller*, 120 F. Supp.3d 669, 698 (E.D. Mi 2015).

CONCLUSION

Prolonging the traffic stop to search the car on a hunch, after having satisfied the officers' legitimate inquiries regarding Defendant's drivers license, auto registration and proof of insurance, was an unlawful violation of the Fourth Amendment. *Rodriguez* held

that a continued seizure is unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation:

> If an officer can complete traffic-based inquires expeditiously, then that is the amount of time reasonably required to complete the stop's mission. . . . [A] traffic stop prolonged beyond that point is unlawful.

135 S.Ct. at 1616 (Citation and quotation marks omitted).

The Court concludes that the Defendant's "you can check" response to Officer Huelsenbeck's initial question whether Defendant had anything illegal in the vehicle did not support a search of the car after the officers had completed their traffic violation investigation without searching the vehicle.

Accordingly, the Court GRANTS Defendant Mahone's Motion to Suppress the firearm and the statements.

SO ORDERED.

DATED: APR 0 8 2016

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE